O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

TERRANCE D. RUTHERFORD,          )   Case No. CV 13-02934 DDP (MANx)
individually and on behalf       )
of other similarly situated      )
individuals,                     )   **ORDER GRANTING DEFENDANTS'**
                                 )   **MOTIONS TO DISMISS**
                Plaintiff,       )
                                 )
        v.                       )
                                 )
FIA CARD SERVICES, N.A.,         )   [Dkt. Nos. 51 and 52]
(Bank of America), ALASKA        )
AIRLINES, INC. and HORIZON       )
AIR INDUSTRIES, INC.,            )
                                 )
                Defendants.      )
_____ )

     Presently before the court are two Motions to Dismiss, one

filed by Defendant FIA Card Services, N.A. ("FIA" or "the Bank")

and the other by Defendants Alaska Airlines, Inc. ("Alaska") and

Horizon Air Industries, Inc. (together with Alaska, the

"Airlines").  Having considered the submissions of the parties and

heard oral argument, the court grants the motions and adopts the

following order.

///

///

## I.  Background

As described in detail in this court's earlier orders, Plaintiff works for Alaska.  FIA operates Bank of America's credit card operations.  The Airlines and FIA entered into a marketing partnership, under which FIA agreed to issue "Alaska Airlines" brand credit cards and make payments to the Airlines.  The Airlines and Bank further agreed to establish an "Incentive Program," under which airline employees would be trained by the airlines and paid by the Bank to market the Alaska credit cards to consumers.

Under the Incentive Program, Airlines employees would distribute credit card applications, which included a space for the employees' identifying information, to passengers and other third parties.  Applicants could either submit the applications through the distributing Airlines employees or mail the applications directly to the Bank.

Employees were offered five dollars for each credit card application submitted to the Bank, so long as the application contained enough information to allow the Bank to accept or reject the application.  Employees were offered forty-five dollars for applications that were ultimately approved.  The Airlines would deposit these incentive amounts into employee bank accounts, along with wages.  (Second Amended Complaint ("SAC") ¶ 40.)[1]  The Airlines also encouraged employee participation in the incentive program by offering cash and other prizes to "top performers." (SAC ¶¶ 38-39).

---

[1] This allegation notwithstanding, the SAC alleges that the Bank offered to pay the incentives, "on behalf of itself and the [A]irlines."  (SAC ¶ 19.)

1   The SAC alleges that Plaintiff distributes over 200
2   applications per month.  (SAC ¶ 47.)  The SAC lists several dozen
3   instances in which, between January and September 2013, Plaintiff
4   received credit card applications and forwarded them to the Bank.
5   (SAC ¶ 51.)  Plaintiff alleges, however, that the vast majority of
6   people to whom applications are distributed do not return their
7   applications to Plaintiff.  (SAC ¶ 48.)  Plaintiff does not know
8   whether the Bank processed any of the applications submitted
9   directly by applicants, with his identifying information.  (SAC ¶¶
10  54-55.)  Plaintiff has, however, received incentive payments during
11  the relevant period of $5,260.  (SAC ¶ 56.)[2]  Plaintiff also
12  alleges that he is ranked as a "top performer" in the incentive
13  program.  (SAC ¶ 55.)

14      Plaintiff alleges that he has not been paid the amounts due to
15  him under the incentive program.  (SAC ¶ 61.)  His SAC alleges
16  causes of action for an accounting, common count for the reasonable
17  value of services rendered, and common count for a book account.
18  Defendants now move to dismiss the SAC.

19  **II.  Legal Standard**
20      A complaint will survive a motion to dismiss when it contains
21  "sufficient factual matter, accepted as true, to state a claim to
22  relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S.
23  662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,
24  570 (2007)).  When considering a Rule 12(b)(6) motion, a court must
25  "accept as true all allegations of material fact and must construe

26
27      [2] Had all 117 of the applications Plaintiff himself submitted
28  been approved, Plaintiff would have been entitled to $5,265.

1   those facts in the light most favorable to the plaintiff." <u>Resnick</u>

2   <u>v. Hayes</u>, 213 F.3d 443, 447 (9th Cir. 2000).  Although a complaint

3   need not include "detailed factual allegations," it must offer

4   "more than an unadorned, the-defendant-unlawfully-harmed-me

5   accusation."  <u>Iqbal</u>, 556 U.S. at 678.  Conclusory allegations or

6   allegations that are no more than a statement of a legal conclusion

7   "are not entitled to the assumption of truth." <u>Id.</u> at 679.  In

8   other words, a pleading that merely offers "labels and

9   conclusions," a "formulaic recitation of the elements," or "naked

10  assertions" will not be sufficient to state a claim upon which

11  relief can be granted.  <u>Id.</u> at 678 (citations and internal

12  quotation marks omitted).

13      "When there are well-pleaded factual allegations, a court should

14  assume their veracity and then determine whether they plausibly

15  give rise to an entitlement of relief." <u>Id.</u> at 679.  Plaintiffs

16  must allege "plausible grounds to infer" that their claims rise

17  "above the speculative level." <u>Twombly</u>, 550 U.S. at 555.

18  "Determining whether a complaint states a plausible claim for

19  relief" is a "context-specific task that requires the reviewing

20  court to draw on its judicial experience and common sense."  <u>Iqbal</u>,

21  556 U.S. at 679.

22  **III.  Discussion**

23      A.   Whether the SAC Alleges an Amount Owed

24      Defendants first contend that the SAC must be dismissed

25  because it fails to allege facts to support Plaintiff's contention

26  that Defendants owe him any money.  In response, Plaintiff contends

27  that the facts alleged, specifically those regarding the number of

28  applications he distributed and submitted, and the amount of

1  compensation he received, are sufficient to give rise to a

2  plausible inference that he has been underpaid.

3      Defendants highlight the fact that the amount of compensation

4  plaintiff received, $5,260, is within five dollars of the amount

5  Plaintiff would have received if every single one of the

6  applications he submitted had been approved.  Plaintiff does not

7  dispute that it is extremely implausible that every application he

8  submitted was approved.  Indeed, Defendants argue that it is

9  implausible that every application that every one of the 117

10 applications contained sufficient information to be processed, let

11 alone approved.

12     The question, however, is whether these facts could support an

13 inference that Plaintiff has been underpaid.  Defendants argue that

14 Plaintiff's receipt of so much money, given the relatively small

15 number of applications Plaintiff himself submitted, indicates that

16 Plaintiff must have received payment for some applications

17 submitted directly by applicants.  This inference, plausible though

18 it may be, is not the only one supported by the facts alleged.

19     Plaintiff has alleged that fully 90% of customers do _not_

20 return their applications to Plaintiff.  While Plaintiff cannot

21 confirm at this stage that any of those customers, who likely

22 exceed 1,000 in number, actually did submit an application,

23 Defendants concede that some of them must have.  Considering

24 Plaintiff's status as a "top performer" and the possibility that

25 Plaintiff's submissions, comprising only 10% of distributed

26 applications, alone could account for almost all of the payments

27

28

1  received, the SAC alleges sufficient facts to give rise to an

2  inference that Plaintiff has not been fully compensated.[3]

3        1.  Whether Alaska Owes Plaintiff Anything

4      In addition to the argument discussed above, Alaska contends

5  that all claims against Alaska must be dismissed because the SAC

6  does not allege that Alaska itself owes Plaintiff any money.

7  Though the SAC alleges that Alaska deposits incentive payments into

8  employee bank accounts, nowhere does it allege that Alaska actually

9  pays employees.  Rather, the SAC alleges that the Bank pays Alaska

10 employees.  (SAC ¶ 40.)  Plaintiff's opposition to Alaska's Motion

11 does not address this argument.  Accordingly, all claims against

12 Alaska are DISMISSED.

13     B.  Accounting Claim

14     The Bank next asserts that Plaintiff's claim for an accounting

15 must be dismissed because an accounting is a remedy, not a cause of

16 action.  Indeed, some courts have held "that an accounting is

17 merely an equitable remedy, and therefore cannot be maintained as

18 an independent cause of action."  Fradis v. Savebig.com, No. CV 11-

19 7275 GAF, 2011 WL 7637785 at *8 (C.D. Cal. Dec. 2, 2011).  Other

20 courts, however, citing Tesselle v. Mcloughlin, 173 Cal.App.4th 156

21 (2009), have concluded that an accounting can exist as an

22 independent equitable cause of action.  See, e.g., Dahon North Am.,

23 Inc. v. Hon, No. 11-cv-5835 ODW, 2012 WL 1413681 at * 11 (C.D. Cal.

24 Apr. 24, 2012); see also Baidoobonso-Iam v. Bank of Am., No. CV 10-

25

26       [3] Indeed, if Plaintiff distributed 200 applications a month

27 and only received a total of 117 back, over 1,500 applications
remain unaccounted for.  Even if the majority of those went

28 unsubmitted, the number is high enough to support an inference that
Plaintiff was underpaid.

1   9171 CAS, 2011 WL 3103165 at *6 (C.D. Cal. Jul. 25, 2011) ("An
2   accounting may take the form of either a legal remedy or an
3   equitable claim.").  This court agrees with the latter approach.

4        A cause of action for an accounting requires that "a
5   relationship exist[] between the plaintiff and defendant that
6   requires an accounting, and that some balance is due the plaintiff
7   that can only be ascertained by an accounting."   Though the
8   relationship giving rise to an accounting claim need not
9   necessarily be a fiduciary one, courts typically require that it
10  reflect some degree of confidentiality or closeness.  Tesselle, 173
11  Cal.App.4th at 179.; Dahon, 2012 WL 1413681 at *13; Fradis, 2011 WL
12  7637785 at *9; Canales v. Fed. Home Loan Mortgage Corp., No. CV 11-
13  2819 PSG, 2011 WL 3320478 at * 8 (C.D. Cal. Aug. 1, 2011).

14       Here, the SAC conclusorily alleges that both the Airlines and
15  the Bank owe Plaintiff a fiduciary duty (SAC ¶¶ 79-80).  The SAC
16  makes no further factual allegations regarding this supposed
17  fiduciary relationship, nor do Plaintiff's Oppositions make any
18  attempt to argue that such a duty exists beyond a single statement
19  that "present circumstances, where Defendant holds all the books
20  and records necessary to calculate proper payment [are] one of
21  'trust and repose.'" (Opp. at 11-12.)  The allegations of the SAC
22  are insufficient to establish Plaintiff and the Bank shared the
23  type of relationship that would give rise to an independent
24  accounting claim.[4]

25       C.  Common Count for Reasonable Value of Services Rendered

26  _____

27       [4] Though Plaintiff's opposition makes some reference to an
    agent-principal relationship, the SAC contains no allegations to
28  that effect, nor do the facts alleged appear to support any such
    relationship.

"[I]t is well settled that there is no equitable basis for an implied-in-law promise to pay reasonable value when the parties have an actual agreement covering compensation." Hedging Concepts, Inc. v. First Alliance Mortgage Co. 41 Cal.App.4th 1410, 1419 (1996). The SAC alleges the existence of an agreement to pay Plaintiff precise amounts for various types of submitted applications. Nevertheless, Plaintiff contends that the Second Cause of Action for Common Count for Reasonable Value of Services Rendered is adequately pled because Federal Rule of Civil Procedure 8(d)(3) allows inconsistent claims to be pled. Rule 8 does not, however, allow a plaintiff to circumvent state law by stating a claim for both express and quasi contract. See In re Facebook Privacy Litigation, 761 F.Supp.2d 705, 718 (N.D. Cal. 2011) ("Although Rule 8 . . . allows a party to state multiple, even inconsistent claims, the rule does not allow a party invoking state law to assert an unjust enrichment claim while also alleging an express contract."); Custom LED, LLC v. eBay, Inc., No. C 12-350 SI, 2012 WL 1909333 at *5 (N.D. Cal. 2012). Plaintiff's Second Cause of Action is DISMISSED with prejudice.

D.   Common Count for A Book Account

"A book account is a detailed statement of debit/credit transactions kept by a creditor in the regular course of business, and in a reasonably permanent manner." Reigelsperger v. Siller. 40 Cal.4th 574, 579 n.5 (2007). "A book account is created by the agreement or conduct of the parties in a commercial transaction. Nonetheless, the mere recording . . . or the incidental keeping of accounts under an express contract does not of itself create a book

account."  <u>H. Russell Taylor's Fire Preverntion Serv., Inc. v.</u>
<u>Cocal Cola Bottling Corp.</u>, 99 Cal.App.3d 711, 728 (1979).

Here, the SAC alleges only that "a book account was created .
. . as a result of Plaintiff's . . . participation in the Incentive
program for Defendants' benefit." (SAC ¶ 106.)  This naked
assertion is insufficient to sustain a common count for a book
account.  Plaintiff's Third Cause of Action is DISMISSED, with
prejudice.

**IV.  Conclusion**

For the reasons stated above, Defendants' Motions to Dismiss
are GRANTED.  Plaintifss' SAC is DISMISSED with prejudice.

IT IS SO ORDERED.

Dated: September 5, 2014

DEAN D. PREGERSON
United States District Judge